53 CCPA

### Application of George O. GRAVES.
### Patent Appeal No. 7560.

United States Court of Customs
and Patent Appeals.
Feb. 17, 1966.

**958**

Marmaduke A. Hobbs, South Bend, Ind., William T. Estabrook, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN, SMITH and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

MARTIN, Judge.

This appeal is from the decision of the Board of Appeals affirming the examiner's rejection of claims 1, 3, 4, 5 and 8 of appellant's patent application,[1] entitled "Food Processing Machine." Since appellant withdraws claim 8 in his brief, the appeal is dismissed as to that claim, leaving only claims 1, 3, 4 and 5 for consideration here. No claim is allowed.

The sole issue is whether the subject matter of the appealed claims is obvious in view of prior art.

To facilitate understanding of appellant's machine, Figure 2 of the application is reproduced in part as follows:

FIG. 2

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge Worley, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. Serial No. 737,884, filed May 26, 1958.

The machine includes a chamber 18 in which corn meal is received from a hopper and mixed thoroughly with a small amount of water. The mixture is then discharged into the throat 22 of an extruding mechanism. That mechanism includes a motor driven screw 24 rotated in a bore in an insert 32 which is closed at its outer end by a circular head plate 26 provided with a circumferentially disposed group of spaced extrusion holes. The screw propels the mixture toward the head plate and extrudes it through the holes therein. The plate is maintained at a temperature sufficiently high to vaporize the moisture in the mixture as it is extruded to prebake the material sufficiently that it becomes relatively brittle after leaving the head plate. A knife blade 100 is mounted outside the head plate for rotation about the solid center portion of the plate to cut the material into sections as it emerges from the holes of the head plate. The length of the sections may be controlled by varying the speed of the blade. The application describes the sections as "corn meal sticks or collets," which are "cylindrical in shape."

In starting the machine, the head plate and adjacent portions of the extruding apparatus are first heated by external heating means such as a blow torch or an electrical heating element to a temperature above that required to cause vaporization of the moisture in the corn meal mixture. Once the machine is in operation, no additional external heat is supplied since the pressure created by the conveying screw during extrusion generates sufficient frictional heat to maintain the temperature required for satisfactory operation.

Claim 1 is representative and reads:

1. A machine for producing collets from cereal, comprising a hopper for cereal, walls defining a chamber receiving cereal from said hopper, a source of water for said chamber, a means in said chamber for mixing cereal and water therein, a housing having a straight bore therein, a single extrusion die plate in axial alignment with and diametrically spanning said bore having a solid central portion and a plurality of extrusion holes therein arranged in a circle and communicating with said bore adjacent the periphery thereof, said plate being rigidly secured to said housing across said bore, a passage connecting said chamber with said bore at a point spaced from said plate, a rotatable screw in said bore for propelling said cereal mixture from said passage to and through the holes in said plate, a revolving knife means adjacent the external surface of said plate and spaced therefrom for cutting the cereal mixture extruded through the holes in said plate into sections of a desired length, and a means separate from said screw for driving said knife means at various predetermined speeds.

The references relied on by the examiner and board are:

| | | | |
|---|---|---|---|
| Nunez | 1,822,309 | Sept. | 8, 1931 |
| Wood | 2,060,408 | Nov. | 10, 1936 |
| Schwebke et al. | 2,350.643 | June | 6, 1944 |
| Birdsall | 2,642,819 | June | 23, 1953 |

The Wood patent discloses a machine for gelatinizing starches obtained from "corn, wheat, rice, tapioca, or the like," which it also refers to as "cereals, tapioca or the like." The machine comprises an upper cereal hopper, a vertical compression chamber made up of a plurality of sections, rotated screw members within those sections driven together for conveying the cereal downwardly through the chamber and finally outwardly through a flaker member or, alternately, through apertures in a die plate. The cereal constituting the raw material is mixed with water to provide a moisture content of twelve to twenty-two percent before being introduced into the machine. During processing, the cereal is subjected to heat treatment by steam or electric means associated with the machine, or heat generated by friction produced as a result of the treatment of certain materials may be utilized. As it passes out of the machine through the flaker mem-

ber or die plate, the processed cereal is cut off in the desired lengths by a cutter comprising rotating knife means. The die member includes a plurality off circularly spaced apertures extending therethrough, the application stating that "the finished product coming from the machine may be in flake, pellet or cube form as desired, depending upon the form of the apertures provided in the die plates * * *." In the form of the machine where the material is extruded through a die plate, the rotating cutting knives are "yieldingly pressed upwardly into engagement with the lower surface of the die plates."

The Schwebke patent discloses a machine for producing a puffed corn meal product illustrated in the drawings as generally in the form of a finger-like stick. This machine includes a mixer into which corn meal is supplied through a spout and a small amount of water is introduced through a valved line. Hydrated material from the mixer is fed to a screw press wherein the resulting friction heats the material to "a temperature high enough to cook the mass and heat the water particles to a temperature high enough for evaporation at atmospheric pressure but being under sufficient pressure to prevent it." The screw forces the material in that condition to the end of the press where the material is exuded between a stationary face plate having entry grooves therein and a rotated face plate which is closely spaced from the stationary face plate and has spiral grooves. As the pressure on the material is released as it passes out between the plates, "the water or moisture in the fluid will immediately flash into steam and any vapor in the liquid will expand to thereby form cellular streamlets."

The Nunez and Birdsall patents both show single die plates used to extrude flour paste fed from a conventional screw press, which press, however, is not coaxial with the die plates. Both die plates have solid central portions and cutting knives on their exit side rotated about axes concentric with the plates. The cutting knives, which are not driven directly by the conveyor screw, may be adjusted in speed with the result that the products, noodles, for example, may be varied in length. In Birdsall, the blade or knife is spaced from the die body by an intervening guide member.

The appealed claims were rejected by the examiner as unpatentable over Wood in view of Schwebke and either Birdsall or Nunez. In affirming that rejection, the board stated:

* * * We find no apparatus expression in the claims either in direct recitation or in significance attached by the preamble reference to "collets" that convinces us that either Wood or Schwebke et al. is other than fully pertinent thereto. If the product significantly differs, it must be by reason of operating parameters as to speed or pressure or heat which are not put in contest by the claim language. Wood refers to mixing water with the cereal charge before entering the hopper * * * which fortifies the premise that the addition of the structure in this regard taught by Schwebke et al. * * * would be no more than an obvious assembly of apparatus for an old and expected result. The feature stressed by appellant as to the solid die plate does not appear to us to be involved in such an unexpected machine organization as to distinguish in kind from the cereal handling teachings of Nunez or Birdsall. In each of these references a pressure advanced column of cereal product is blocked by a solid die plate, extruded in a marginal pattern near the border of the column, and the existing product is severed by knife elements mounted independent of the extruding screw. Particularly * * * in Nunez, it is illustrated that the speed of drive of such severing means may be adjusted to vary the product. We share the Examiner's view that within the apparatus relationships stated in the appealed claims it

would be obvious to workers of ordinary skill in the art to assemble the machinery for moistening the product with the Wood device and to change the die plate to a form having a solid central formation as recited. * * *

Appellant's arguments before us appear to raise the same points urged before and considered by the board. They do not convince us that there is any error in the board's conclusion.

The significant concept of appellant's invention is disclosed in Schwebke which provides apparatus wherein a moist cereal mixture is heated under pressure through a screw conveyor so that exit of material from the pressure area results in a puffed cereal product. That product is illustrated by Schwebke as finger-shaped, which is the term used by appellant in describing his sticks or "collets."

Wood describes a similar arrangement where he mixes water with a cereal charge before introducing it into the press and extrudes the compressed and heated material through a die plate. In fact, Wood not only discloses subjecting his cereal and water mixture to pressure and heat as the conveyor screw advances it to the extrusion die but he also refers to the possibility of "the heat generated by the friction produced during the operation" being "greater than that required by certain products." Nothing unobvious is seen in providing Wood with structure for introducing the cereal and water separately into the mixer as used in Schwebke. Likewise, we conclude that it would be no more than an obvious mechanical expedient to substitute a die plate with a solid center as shown in Nunez or Birdsall in Wood, particularly since the central opening in Wood's plate is actually closed completely by another portion of the machine.

We also conclude that it would be obvious to a person of ordinary skill in the art to provide means separate from the conveyor screw for driving the cutter knives of Wood at an adjustable speed, even without consideration of Birdsall or Nunez. However, a particularly potent suggestion of using that feature is made in Birdsall which states that the length of the extruded strands of material is controlled by varying the speed of rotation of a rotating knife which cuts the strands while maintaining constant the rate of feed of the extruded mix.

We think it clear that appellant has merely employed known features in the prior art of record in a manner made obvious by that prior art to provide a machine which has no new or unexpected function. We, therefore, consider the appealed claims unpatentable under 35 U.S.C. § 103 and the decision of the board is affirmed.

Affirmed.